Statement of the Case.
MONROE, J.
This is a petitory action for the recovery of a strip of land described in the title upon which plaintiff sues as:
“Also another tract of land, 60 feet wide, beginning at the northwest corner of the above-described tract and extending, in a northwesterly direction, on the east side and adjoining to a canal right of way, to Bayou Plaquemine Brulée, * * * all, in accordance with plan herewith filed.”
The property thus referred to as the “above-described tract” is that indicated by the name of the plaintiff on the annexed sketch (which, with no pretensions to absolute accuracy, will serve for purposes of illustration), extending as far up as the line “R — S,” at which point (“R”) begins the strip,' the location of which, above the “Pumping plant” (as indicated on the sketch), is the matter to be decided:

*439 The plan referred to in plaintiff’s title shows a canal 100 feet wide, as in the sketch, and also shows the same canal as continuing beyond the pumping plant (as shown on the sketch, 'but not on the plan) to the bayou. The trouble is that there was no canal, as shown on the plan, at the time that plaintiff made his purchase, but merely a reservation of a right of way 100 feet wide to the concession line .for the purposes of a canal, which would have served well enough to locate the strip sold to plaintiff but for the fact that, according to the plan, made part of his title, the canal, as thereupon represented, leaves the concession line at about the point indicated (on the sketch) by the pumping plant, and reaches the bayou by continuing in that direction; but, as no lagoon or ditch appear on the plan, and no other sign, mark, or monument, in relation to which to fix the location of the canal right of way, and, as both plaintiff and defendant agree that from the point “R” to the bayou the description is not controlled by any reference to the concession line, a good deal of testimony has been adduced with a view of determining where the strip here in question is to be found. The facts necessary to a decision are: That on August 9, 1895, plaintiff bought from W. W. Duson a farm of 274 acres (being the property first described in the deed to which we have referred), and, intending, no doubt, to cultivate rice, also bought a strip of land extending from his farm to the bayou, to enable him, should he think proper, to irrigate his crops, by bringing water from the bayou, which is something less than a quarter of a mile distant from the farm. Duson, his vendor, also had views in regard to the irrigation of lands belonging to himself and others lying still farther off, and it was for that reason that he reserved the right of way for a canal. It is doubtful whether any canal had been located by survey prior to the sale to plaintiff, even along the side of plaintiff’s farm, and we think the testimony conclusive to the effect that there had been no such location from the point at which, according to the plan annexed to the deed to plaintiff, the canal appears to leave the concession line. On March 8,1897, Duson sold to Peter Doerr, Joseph Roller, and Anthony Longenbaugh (the last named being the plaintiff herein)three-fourths interest in the right of way so reserved, retaining the remaining one-fourth for himself, and he and the purchasers associated themselves together (without incorporation) under the name of “Blanc Canal Company,” and in 1897 made an opening through the bank of the bayou at the point marked “A 1,” so as to let the water into, and through, the “Lagoon” to; the pumping plant wdiich they erected at the lower end of the lagoon, as indicated on the sketch. Thereafter, on February 15, 1898, the four associates, together with George Ferre and John W. Roller, organized a corporation called the Roller Canal Company, Limited, of which plaintiff was named a director. The capital stock of the corporation was fixed at $16,000, and the two new men subscribed for 40 shares each, and paid ,$8,000 for it in cash. The others subscribed for 20 shares each, and by notarial act of date February 19, 1898, transferred to the corporation their interests in the canal right of way and Blanc Canal Company at a valuation of $7,000, which left each of them indebted -to the amount of $250 on his stock subscription, which amount, it was understood, might be compensated by w'ork. The cprporation, having thus considerable capital at its disposal, installed more powerful machinery, and it was decided to open more direct communication with the bayou than was afforded through the lagoon, which, as we understand the testimony, was badly obstructed.
Mr. Doerr says in his testimony, which we *441 find abundantly corroborated, that the opening between the bayou and the lagoon was dug in 1897 by plaintiff, Jos. Roller, and himself, and that the ditch to the right of the lagoon was dug by the Roller Canal Company in 1898. Being asked what the purpose was, he replied:
“We installed more machinery, more pumps, and enlarged the plant all the way round, and did it for more flow of water.”
And his testimony proceeds:
“Q. Who had charge of that ditch there? A. At first, they left it out by contract. Whipple & Gamble had it, and they throwed it up. It was bad. John Roller was manager, and we had to do it ourselves — we hired teams. We put in from 12 to 15 teams a day, and we had our own teams — Mr. Roller, Mr. Longenbaugh, and myself.”
Opinion.
There is no doubt that plaintiff himself participated, first, as a member of Blanc Canal Company, and then as a member of Boiler Canal Company, in the establishment of the irrigation plant and the ditch leading thereto from the bayou, where they are now, and where, in 1904, they were when sold by the liquidating commissioners of the Boiler Canal Company to the present defendant.
Plaintiff’s contention is that the plant and ditch are on the “60-foot” strip that he bought 'from Duson, because, as he asserts, they are on the east side of, and adjoining, the canal right of way, but he .fails to sustain his contention, since the canal right of way cannot be said to have been located until 1898, when he, with the other members of the Boiler Company, located it upon the land which he is now claiming. There has never been any question, and is none now, as to plaintiff’s right to a strip of land, 60 feet wide, extending from the northwest corner of his farm to the bayou, and, in fact, he has been offered a strip 100 feet wide, but he now wants the strip with the irrigation plant and supply ditch on it, and we agree with the judge a quo that he does not show title to it. Moreover, we are of opinion that, if his title called for that particular. strip (which it does not), he would'be estopped to assert such title by reason of his having as a member of the Boiler Canal Company, participated in the definite location of the canal right of way thereon, and hence that defendant’s pleas of estoppel are well founded. Plaintiff also sets up a plea of estoppel predicated upon alleged admissions by the Boiler Canal Company, to the effect that it was occupying his property. We find that Mr. Duson as president of the Boiler Canal Company was at one time disposed to do almost anything to placate plaintiff, who began to give trouble after he had lost his stock in that company, but he was not authorized, nor do we think he intended, to concede what plaintiff is now claiming. He testifies that the admission on which plaintiff relies concerned one or two small buildings which were situated below the pumping plant and which have been removed. But in any event his admissions could not be allowed to affect the rights of the present defendant, who acquired the property in 1904, on the faith of the record, which shows only that plaintiff is entitled to a strip of land 60 feet wide to the eastward of, and adjoining, the right of way of a canal, which right of way, according to the deed, should follow the concession line to the bayou, but which, according to the plan annexed to and made part of the deed, is not located above the pumping plant with reference to anything else than the port line below the pumping plant in one direction, and the bayou in the other, and which as a matter of fact had been located, with plaintiff’s assistance, prior to defendant’s purchase on the land that plaintiff now claims. Defendant had the right under the circumstances *443 to assume that the right of way had been located where the Roller Company had established its plant and intake ditch, or else that, for the purposes of plaintiff’s strip, it would follow the concession line to the bayou, and plaintiff having, in his own interest as a stockholder in the Roller Company, participated in establishing the plant and ditch where defendant found them, is bound by that construction. [1, 23 The legal principles applicable to the facts, as we find them, are that the plaintiff in a petitory action must exhibit a sufficient title to the property claimed by him, regardless of the defects in the title exhibited by the defendant, and, that where one, by his words or conduct, willfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring, as to the latter, and to his prejudice, a different state of things as existing at the same time. C. P. art. 44; Marsh v. Smith, 5 Rob. 523; Meux v. Martin, 5 La. Ann. 107; Chamberlin v. Millbank & Co., 6 La. Ann. 383; Airey & Co. v. Bank, 33 La. Ann. 1350; Joubert v. Sampson, 49 La. Ann. 1000, 22 South. 203; 16 Cyc. pp. 722, 770, 771.
The court a qua gave judgment quieting defendant in the possession of the property claimed by plaintiff and decreeing plaintiff to be entitled to a right of way to the eastward of, and adjoining, said property, as indicated on a plan which is made part of the judgment. The latter part of the decree would hardly seem to be authorized, considering the pleadings in the case and the parties before the court, but, as defendant asks that the judgment be affirmed, and plaintiff does not complain of that portion of the decree, the judgment appealed from is affirmed.